**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**


CARL PASS,

      Petitioner,

v.                              Case No. 8:06-cv-548-T-24EAJ

JAMES R. MCDONOUGH,

      Respondent.

_____/


## ORDER

This cause is before the court upon Petitioner Carl Pass's ("Pass") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. Pass challenges his 2002 convictions entered by the Thirteenth Judicial Circuit Court, Hillsborough County, Florida. (Dkt. 1). Respondent has filed a response to the petition (Dkt. 9) and Pass has filed a reply thereto (Dkt. 14).

## Background

Pass was charged by a superseding Information in Case No. 01-19495 with driving under the influence (fourth or subsequent violation), driving while license permanently revoked, carrying a concealed weapon and carrying a concealed weapon by a convicted felon. (Dkt. 11, Ex. 1, Vol. I, p. 23).[1] Pass was also charged in Case No. 02-906 with an

---

[1] Respondent has filed with its response the record on direct appeal from the state district court of appeal. (Dkt. 21, Ex. 1, Vols. I-V). The page numbers of references in this exhibit are designated by the page numbers located in the right-hand corner of the page.

additional count of driving while license permanently revoked.  (Dkt. 11, Ex. 1, Vol. I, p. 135).  On July 22, 2002, Pass entered an "open" guilty plea.[2]  (Dkt. 21, Ex. 1, Vol. 2, pp. 267-68).  Pass was adjudicated guilty and sentenced to twenty-five years imprisonment on September 23, 2002.[3]  He did not appeal the judgments or sentences.

On October 17, 2003,[4] Pass signed his *pro se* motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850.  (Dkt. 11, Ex. 1, Vol. I, pp. 177-88).  In his motion, Pass presented four claims for relief.  In ground one, Pass alleged his attorney rendered ineffective assistance in failing to file a motion to dismiss the charge of carrying a weapon by a convicted felon.  In ground two, he alleged that the trial court failed to establish a sufficient factual basis for his plea.  In ground three, Pass alleged his convictions for driving while his license was permanently revoked were invalid.  In ground four, he alleged that the trial court erred in entering judgment on the driving under the influence charge without valid predicate convictions to qualify that offense as a felony.  In a non-final order rendered on February 11, 2004, the state trial court denied relief on ground two of the Rule 3.850 motion and directed the State to respond to the remaining

---

[2] The State nolle prossed the charge for carrying a concealed weapon.  (Dkt. 11, Ex. 1, Vol. I, p. 95).  Pass pled guilty to all the remaining charges.

[3] Pass was sentenced on each count of the Informations as follows: five years imprisonment for driving under the influence to run concurrently with his sentence for the revocation offense charged in Case No. 02-906 but consecutively to the sentence imposed for the revocation offense and weapon offense charged in Case No. 01-19495; five years imprisonment on the revocation offense charged in Case No. 01-19495 to run consecutively to the terms of imprisonment on all the other offenses; and fifteen years imprisonment on the weapon offense in Case No. 01-19495 to run consecutively to the sentences for all other offenses, for a total term of imprisonment of twenty-five years.  (Dkt. 11, Ex. 1, Vol. I, pp. 93-103; 153-54; 157-58).

[4] For purposes of calculating the limitations period under the AEDPA, the Court will give Pass the benefit of the "mailbox rule" and consider his § 2254 petition and documents related thereto as "filed" on the date Pass signed and delivered them to prison authorities for mailing.  *See Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988); *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).  The Court will also give Pass the benefit of this rule with respect to his state court filings when calculating the limitations period under § 2244(d).

three claims for relief.  (Dkt. 11, Ex. 1, Vol. II, pp. 189-94).  Following the State's response, in a non-final order rendered on March 16, 2004, the state trial court denied relief on ground one of the rule 3.850 motion and ordered an evidentiary hearing be held on grounds three and four.  (Dkt. 11, Ex. 1, Vol. III, pp. 374-80).

Thereafter, counsel was appointed to represent Pass at the evidentiary hearing.[5] Counsel subsequently filed a motion to amend Pass's Rule 3.850 motion to add a fifth claim that Pass's plea was involuntary because the prosecutor had threatened to prosecute Pass for five additional driving while license suspended offenses which allegedly occurred in December 2001.  (Dkt. 11, Ex. 1, Vol. II, pp. 507-09).  Pass further asserted in the motion to amend that his trial counsel rendered ineffective assistance in erroneously advising Pass that these additional charges would not be subject to dismissal based upon a violation of Florida's single subject rule.  (Id.).  By non-final order rendered on June 16, 2004, the state trial court denied the unsworn motion to amend without prejudice.[6]  (Dkt. 11, Ex. 1, Vol. II, pp. 526-27).

An evidentiary hearing on grounds three and four of Pass's Rule 3.850 motion was held on July 14, 2004.  (Dkt. 11, Ex. 1, Vol. IV).  At the conclusion of the hearing, the state trial court continued the case until August 25, 2004.  (Id. at p. 600).[7]

_____

[5] Assistant Public Defender Theda R. James ("James") was appointed to represent Pass at the hearing.

[6] It does not appear from the record that Pass refiled this amendment.  Notwithstanding, in its final order on Pass's Rule 3.850 motion, the state trial court addressed this claim.  (Dkt. 11, Ex. 1, Vol. IV, pp. 603-16).

[7] The state trial court continued the proceeding until August 25, 2004, so that it could review the transcript of the proceeding.  Specifically, the state trial court judge stated as follows at the conclusion of the evidentiary hearing:

All right.  What I'm going to do is set this for a ruling because I'm going to need the transcript of

On August 16, 2004, Pass, through counsel, filed a second motion to amend his Rule 3.850 motion.[8]  (Dkt. 11, Ex. 1, Vol. III, pp. 541-44).  In the motion, he sought to add a sixth claim to his motion alleging that his trial counsel rendered ineffective assistance in failing to investigate the dates of Pass's prior driving under the influence ("DUI") convictions and erroneously advised him to plead guilty to the offense of felony DUI.  (Id.).

By final order rendered on August 25, 2005, the state trial court denied grounds three, four, five and six of Pass's Rule 3.850 motion.  (Dkt. 11, Ex. 1, Vol. IV, pp. 603-16).  Pass, proceeding *pro se*, appealed this denial to the state district court of appeal.  Following submission of his initial brief and the State's answer brief, Pass retained counsel to represent him on the appeal.  Following supplemental briefing, the state district court of appeal affirmed the denial of the Rule 3.850 motion, with the exception of ground three, on February 10, 2006.  (Dkt. 11, Ex. 10).  *See Pass v. State*, 922 So.2d 279 (Fla. 2d DCA 2006).  The state district court of appeal reversed the state trial court's denial of ground three of the Rule 3.850 with respect to the two convictions for driving while license permanently revoked and remanded the case to the state trial court for the vacatur of those

---

course so let's set it for August the 25th enough time [sic], August 25th at 8:30 for a ruling and he [Pass] can be returned.

(Dkt. 11, Ex. 1, Vol. IV, p. 600).

   [8] A review of the online docket from the Clerk of Court, Hillsborough County, Florida, reflects that Pass filed this second motion to amend seeking to add ground six to his Rule 3.850 motion.  However, the docket does not reflect that the state trial court specifically granted this motion.  *See* http://207.156.115.81/oridev/criminal_pack.doc?pcSearchMode=NS&pnPidm=90010&pcCaseId=02-CF-0 00906&pnCnt=1&pcCourtType=%.  Notwithstanding, as with the first motion to amend seeking to add the fifth claim to the Rule 3.850 motion, the state trial court addressed this sixth ground for relief in its final order denying the Rule 3.850 motion.  (Dkt. 11, Ex. 1, Vol. IV, pp. 603-616).

4

convictions and sentences.[9]  *See id.* at 281-82.

Both Pass and the State filed motions for rehearing.  (Dkt. 11, Exs. 11, 14).

Following responsive pleadings, on March 16, 2006, the state district court of appeal, in

Case No. 2D04-4522, denied the motions for rehearing.  (Dkt. 11, Ex. 15).  The mandate

issued on April 3, 2006.  (Dkt. 11, Ex. 17).

The instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 was

filed by retained counsel on April 3, 2006.  The petition is timely.  Upon review of the

record, Pass's petition must be DENIED.

## Standard of Review

Pursuant to 28 U.S.C. § 2254(a), as amended by the Antiterrorism and Effective

Death Penalty Act of 1996 ("AEDPA"), enacted and effective on April 24, 1996,  "a district

court shall entertain an application for a writ of habeas corpus in behalf of a person in

custody pursuant to the judgment of a State court only on the ground that he is in custody

in violation of the Constitution or laws or treaties of the United States."   28 U.S.C.

§ 2254(a).  Where a state court initially considers the issues raised in the petition and

enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims.

*See Penry v. Johnson,* 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880,

---

[9] In *Fla. Dep't of Highway Safety and Motor Vehicles v. Critchfield*, 842 So.2d 782 (Fla. 2003), the Florida Supreme Court held that chapter 98-223, Laws of Florida, violated Florida's single subject rule and was therefore unconstitutional.  *See Pass*, 922 So.2d at 281.  Section 13 of chapter 98-223 created section 322.341, prohibiting driving while a license is permanently revoked.  *See id.*  In *Gillman v. State*, 860 So.2d 1099, 1100 n. 1 (Fla. 1st DCA 2003), the state district court of appeal held that defendants who committed their offenses on or after July 1, 1998, but before the re-enactment [of the statute] became effective on May 21, 2003, were entitled to relief under *Critchfield*.  The state district court of appeal found upon review of the state trial court's denial of Pass's Rule 3.850 that Pass had been convicted of a "nonexistent" crime with respect to his two convictions for driving while license permanently revoked and remanded the case for the post-conviction court to vacate the convictions and sentences for those two offenses pursuant to *Critchfield* and *Gillman.  See* Pass, 922 So.2d  at 282.

5

889-90 (11th Cir. 2003).

Habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d).  *Price v. Vincent*, 538 U.S. 634, 638-39 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003).  "The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions."  *Putnam v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001) (citing *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000)).  A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case.  *See Jones v. McDonough*, 2007 WL 174442 at *1 (11th Cir., Jan. 24, 2007); *Putnam*, 268 F.3d at 1241.  A state court makes an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of a petitioner's case, or unreasonably extends or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context.  *See id.*  "[A] federal habeas court may not issue the writ under the reasonable application clause simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly.  Rather,

6

that application must also be unreasonable." *Williams*, 529 U.S. at 411.  An "unreasonable application" is an "objectively unreasonable" application." *Putnam*, 268 F.3d at 1241.

State courts need not explain their merits rulings to qualify for deference under the AEDPA.  *Jones*, 2007 WL 174442 at *2.  Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. of Dep't of Corrs.*, 278 F.3d 1245, 1255  (11th Cir. 2002) ("[T]he statutory language [in § 2254(d)(1)] focuses on the result, not the reasoning that led to the result, and nothing in that language requires the state court adjudication that has resulted in a decision to be accompanied by an opinion that explains the state court's rationale). "All that is required under § 2254(d)(1) is an adjudication on the merits, not a full state court opinion." *Parker v. Secy for the Dep't of Corr.*, 331 F.3d 764, 776 (11th Cir. 2003).  "Even a summary, unexplicated rejection of a federal claim qualifies as an adjudication entitled to deference under § 2254(d)(1)." *Herring v. Sec'y for the Dep't of Corr.*, 397 F.3d 1338, 1347 (11th Cir. 2005).  Finally, a state court's factual finding is presumed to be correct, and a petitioner must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

Since Pass's conviction was entered after the AEDPA was enacted, his petition is subject to the provisions thereof.  Because a state court initially considered the issues raised in the petition, § 2254(d) governs the review of Pass's claim.  *See Mobley v. Head,* 267 F.3d 1312, 1316 (11th Cir. 2001).

## Exhaustion and Procedural Default

Before this Court may grant habeas relief to a state prisoner under 28 U.S.C. §

2254, a petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A), (c); *Keinz v. Crosby*, 2006 WL 408686 (11th Cir. 2006); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan,* 526 U.S. at 842; *see also Henderson*, 353 F.3d at 891 ("A state prisoner seeking federal habeas relief cannot present a federal constitutional claim in federal court unless he first properly presented the claim to the state courts) (citations omitted)). A § 2254 petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State ... if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt v. Jones*, 348 F.3d 1355, 1358 (11th Cir. 2003) (citing 28 U.S.C. § 2254(c)). In so doing, a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (citing O'Sullivan, 526 U.S. at 845).

"The teeth of the exhaustion requirement comes from its handmaiden, the procedural default doctrine." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). Pursuant to this doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Id.* (citing O'Sullivan, 526 U.S. at 845-6). Under the first exception, to establish cause for a procedural default, a petitioner "must demonstrate that some objective

factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999); *see also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *See United States v. Frady*, 456 U.S. 152 (1982).  In other words, he must show that there is at least a reasonable probability that the outcome of the proceeding would have been different.  *See Henderson*, 353 F.3d at 892 (citing *Wright*, 169 F.3d at 703; *Crawford  v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002)).

Under the second exception, a federal court may review a procedurally defaulted claim if such review is necessary to correct a fundamental miscarriage of justice.  *See Henderson*, 353 F.3d at 892 (citing *Murray*, 477 U.S. at 495-96).  "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent."  *Id.*  This exception relates to a petitioner's "actual" rather than "legal" innocence.  *See Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998); *Murray*, 477 U.S. at 495-96)).  "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense."  *Panarites v. Crosby*, 2006 WL 196939 at *5 (M.D. Fla., Jan. 24, 2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  Moreover, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial."  *Johnson*, 256 F.3d at 1171 (citing *Calderon*, 523 U.S. at 559 (internal quotation omitted)).

**Standard for Ineffective Assistance of Counsel Claims**

In three of the grounds for relief presented in the instant petition, Pass asserts that his right to effective assistance of counsel was violated. The Sixth Amendment protects a defendant's right to the effective assistance of counsel during criminal proceedings against him. To prevail on a claim of ineffective assistance of counsel in the context of a guilty plea, Pass must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Hill v. Lockhart*, 474 U.S. 52 (1985). First, he must demonstrate that his attorney's "representation fell below an objective standard of reasonableness" considering the circumstances as they existed at the time of representation. *Strickland,* 466 U.S. at 687-88. This requires him to overcome a strong presumption that his attorney's performance was within the range of competence demanded of attorneys defending criminal cases. *Id.* at 689. Second, even if Pass can show that counsel performed incompetently, he must also show there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on proceeding to trial. *See Hill*, 474 U.S. at 59. A "reasonable probability" is one that is sufficient to undermine confidence in the outcome of the proceedings. *Id.* at 694.

Under *Strickland*, "counsel owes a lesser duty to a client who pleads guilty than to one who decides to go to trial, and in the former case counsel need only provide his client with an understanding of the law in relation to the facts, so that the accused may make an informed and conscious choice between accepting the prosecution's offer and going to trial." *See Wilson v. Welch*, 2005 WL 1054031 (M.D. Fla., Mar. 31, 2005) (quoting *Walker v. Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984)). In assessing a lawyer's performance, "[c]ourts must 'indulge [the] strong presumption' that counsel's performance

10

was reasonable and that counsel 'made all significant decisions in the exercise of reasonable professional judgment.'" *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000) (en banc), *cert. denied*, 531 U.S. 1204 (2001).  "The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken the action that his lawyer did take." *Van Poyck v. Fla. Dept. of Corrections,* 290 F.3d 1318, 1322 (11th Cir. 2002) (citing *Chandler*, 218 F.3d at 1315).  Counsel's trial strategy cannot be second guessed, as "judicial scrutiny of counsel's performance must be highly deferential." *Chandler,* 218 F.3d at 1314 (quoting *Strickland,* 466 U.S. at 689). Tactical decisions within the range of reasonable professional competence are not subject to collateral attack, unless a decision was so "patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983).  Moreover, where the record is incomplete or unclear about counsel's actions, it is presumed that counsel exercised reasonable professional judgment.  As counsel's trial strategy is presumptively reasonable, the determination is not "that the particular defense lawyer in reality focused on and, then, deliberately decided to do or not do a specific act."  Rather, the presumption is "that what the particular defense lawyer did at trial . . . were acts that some reasonable lawyer might do." *Chandler,* 218 F.3d at 1314-15.

## Discussion

### Ground One

In Ground One of the instant petition, Pass alleges his trial counsel rendered ineffective assistance in failing to move to dismiss the charge presented in Case No. 01-19495 for carrying a concealed weapon.  In support of his claim, Pass relies on the

11

following excerpt from Deputy John Seale's[10] deposition: "When we had him step out [of the truck] is when I noticed the knife sticking out from the edge of the seat."

Pass raised this claim in his Rule 3.850 motion in the state trial court.  (Dkt. 28, Exs. 63-65).  The claim was denied by the state trial court and the denial was affirmed by the state district court of appeal.  (Dkt. 11, Exs. 10, 15).  Thus, the claim was exhausted and is properly before the Court in the instant petition.  *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida state remedies are exhausted after appeal to the district court of appeal from denial of a collateral attack upon a conviction).  Notwithstanding, federal review of this claim is foreclosed by entry of Pass's guilty plea.

A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea.  *See Tollett v. Henderson*, 411 U.S. 258, 266-67 (1973); *Wilson v. United States*, 962 F.2d 996 (11th Cir. 1992).  As a threshold matter, the Court finds that Pass's guilty plea was voluntarily and intelligently made.  Pass signed a written plea form, acknowledgment and waiver of rights in both Case No. 01-19494 and Case No. 02-906 in which he averred that he was pleading freely and voluntarily, and that he had not been threatened or coerced to enter the guilty plea.[11]  (Dkt.

---

[10] Deputy John Seale of the Hillsborough County Sheriff's Office was one of the officers present at the scene of the traffic stop where Pass was arrested.

[11] In the plea forms that Pass signed, he averred in part as follows:

13.  I certify that no one has threatened me in any way in order to get me to enter this plea, and I am pleading freely and voluntarily.  Other than the terms of the plea negotiation as set forth above (if applicable), no one has promised me anything upon which I have relied in order to influence me to enter this plea.

14.  I certify that I have discussed the charges with my attorney including the maximum possible and mandatory minimum (if any) penalties and possible defenses and am fully satisfied with the representation of my attorney.  I understand that by entering this plea that there is no guarantee what gain/credit time, if any, I will receive should I be sentenced to Florida State Prison.  I understand that

11, Ex. 1, Vol. I, pp. 74, 152).   The state trial court judge questioned Pass as to his

understanding of the form and inquired of Pass as to his understanding of the implications

of pleading guilty.   At the plea hearing, the colloquy proceeded as follows:

| | |
|---|---|
| THE COURT: | Mr. Pass, your attorney indicates to me that you wish to enter a plea of guilty in your best interest to driving under the influence fourth or subsequent violation, a felony of the third degree punishable by up to five years in the Florida State Prison, and driving while license permanently revoked, another felony of the third degree punishable by up to five years in the Florida State Prison and felon carrying a concealed weapon, a felony of the second degree punishable by up to 15 years in the Florida State Prison; is that correct sir? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | In addition to that in case number 02-906 you're pleading guilty to one count of driving while license permanently revoked; is that correct, sir? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Has anyone promised you anything or threatened you in any way to get you to do this? |
| THE DEFENDANT: | No, sir. |
| THE COURT: | Are you doing this because you believe it's in your best interest at this time? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | Sir, do you read, write and understand the English language? |
| THE DEFENDANT: | Yes, sir. |

---

prior convictions or treatment as a habitual offender will affect my eligibility to earn gain/credit time.

(Dkt. 11, Ex. 1, Vol. I, pp. 74, 152).

THE COURT:                       Did you read this plea form front and back?

THE DEFENDANT:                   Yes, sir.

THE COURT:                       You understand the rights you're giving up here today and the minimum and maximum penalties I can impose?

THE DEFENDANT:                   Yes, sir.

THE COURT:                       You understand you're giving up your right to a jury trial, a right to confront and cross-examine the State's witnesses, to call witnesses in your own behalf and in addition to that you're giving up your right to an appeal, sir; do you understand that?

THE DEFENDANT:                   I do.

THE COURT:                       And you still wish to enter this plea?

THE DEFENDANT:                   Yes, sir.

THE COURT:                       Are you under the influence of any alcohol or drugs here this afternoon or have you been within the last 24 hours?

THE DEFENDANT:                   No, sir

THE COURT:                       What grade did you complete in school?

THE DEFENDANT:                   Twelfth.

THE COURT:                       Did you have sufficient time to discuss this with your attorney?

THE DEFENDANT:                   Yes, sir.

THE COURT:                       Are you satisfied with Mr. Bodiford's services?[12]

THE DEFENDANT:                   Yes, sir.

THE COURT:                       Mr. Bodiford, is the plea entered with your approval?

---

[12] Pass was represented at the plea hearing by attorney Joseph Bodiford.

14

| MR. BODIFORD: | Yes, Your Honor. |
|---|---|
| THE COURT: | Sir, do you understand that if you're not a citizen of the United States you could be deported? |
| THE DEFENDANT: | Yes. |
| THE COURT: | And if you get in trouble again these convictions could be used against you to enhance this and other – to enhance penalties in this and other jurisdictions? |
| THE DEFENDANT: | Yes, sir. |
| THE COURT: | All right, I'll find his pleas are freely, voluntarily knowing and intelligently entered.  You want to give me a factual basis? |

(Dkt. 11, Ex. 1, Vol. II, pp. 304-07).  The plea colloquy and Pass's signature on the plea forms demonstrates the knowing and voluntary nature of Pass's plea.  In Ground One of the instant petition, Pass does not present any evidence to demonstrate, nor does he allege, that his plea was involuntary.

By entering a voluntary guilty plea, a defendant relinquishes the right to a jury trial, to assistance of counsel, to raise a defense, and to confront his accusers.  *See Jennings v. Crosby*, 2006 WL 2425522 at *7(M.D. Fla., Aug. 21, 2006) (citing *Boykin v. Alabama*, 395 U.S. 238, 242-44 (1969); *United States v. Broce*, 488 U.S. 563, 573 (1989)).  The contentions raised in Ground One allege an instance of ineffective assistance rendered prior to entry of Pass's guilty plea.  The underlying factual basis for the claim is premised on events alleged to have occurred prior to entry of the plea rather than contemporaneously with it.  Thus, Pass's knowing and voluntary guilty plea waived his antecedent non-jurisdictional claims including his pre-plea claim of ineffective assistance of counsel because the claim does not implicate the validity of the plea.  *See Jennings*,

2006 WL 2425522 at *7 (citing *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000));

*Wilson*, 962 F.2d at 997 (pre-plea claim of ineffective assistance of counsel waived).

Accordingly, relief on Ground One will be denied.

Notwithstanding, even if the Court were to find that this claim was not waived by

entry of the guilty plea, Pass would not be entitled to federal habeas relief.  Pass presented

this claim in his Rule 3.850 motion.  The state trial court denied the claim in its written order

rendered on March 16, 2004.  Specifically, the state trial court, in applying the *Strickland*

standard to this ineffective assistance of counsel claim, held in relevant part as follows:

> In ground 1, Defendant claims ineffective assistance of counsel.  When ineffective
> assistance is alleged, the burden is on the person seeking collateral relief to
> specifically allege the grounds for relief and to establish whether the grounds
> resulted in prejudice.  Effective assistance of counsel does not mean that a
> defendant must be afforded errorless counsel or that future developments in law
> must be anticipated.  Meeks v. State, 328 So.2d 673 (Fla. 1980).  In Strickland v.
> Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U.S.
> Supreme Court provided the following standard for determining ineffective
> assistance of counsel:
>
>> The benchmark for judging any claim of ineffectiveness must be whether
>> counsel's conduct so undermined the proper functioning of the adversarial
>> process that the trial cannot be relied on as having produced a just result.  A
>> convicted defendant's claim that counsel's assistance was so defective as to
>> require reversal of a conviction...has two components.  First, the defendant
>> must show that counsel's performance was deficient.  This requires showing
>> that counsel made errors so serious that counsel was not functioning as the
>> "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the
>> defendant must show that the deficient performance prejudiced the defense.
>> This requires showing the errors were so serious as to deprive the defendant
>> of a fair trial, a trial whose result is reliable...[T]he proper standard for attorney
>> performance is of reasonably effective assistance.
>
> 466 U.S. at 686-687.  In Downs v. State,453 So.2d 1102 (Fla. 1984), the Florida
> Supreme Court stated that the defendant must affirmatively prove prejudice.  The
> test for prejudice is:
>
>> [T]hat there is a reasonable probability that, but for counsel's unprofessional
>> errors, the result of the proceeding would have been different.  A reasonable

16

probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694.

Specifically, Defendant claims ineffective assistance of counsel due to counsel's failure to file a motion to dismiss the felon carrying concealed [sic] weapon charge, which was count four in case 01-19495.  Defendant claims the that [sic] in his deposition, Deputy John Seale stated "when we had him step out is when I noticed the knife sticking out from the edge of the seat."  Defendant claims Deputy Seale's statements are sufficient to establish that the knife was not concealed and cites Gibson v. State, 576 So.2d 899 (Fla. 2d DCA 1991), and State v. Hardy, 610 So.2d 38, 41 (Fla. 5th DCA 1992) to support his position. Consequently, Defendant claims counsel had a duty to motion the Court to dismiss the charge or alternatively to object at the plea hearing that there was no factual basis for Defendant's guilty plea to count four in case 01-19495. Lastly, defendant claims counsel's failure to move to have count four dismissed allowed Defendant to plea and be sentenced for an offense he did not commit.

A review of the July 22, 2002 transcript reflects that the State gave the following factual basis with respect to the felon carrying a concealed weapon charge:

> During the course of the investigation it was determined that he had a weapon concealed underneath his seat from ordinary sight and he was a convicted felon.

(See July 22, 2002 Transcript, page 12, attached).  In Ensor v. State, 403 So.2d 349, 354-55 (Fla. 1981), the Florida Supreme Court held that a weapon need not be absolutely invisible to be concealed within the meaning of § 790.001, Florida Statute.  Moreover, the Florida Supreme Court held that the phrase "ordinary sight of another person" contained in § 190.001(2) means "the casual and ordinary observation of another on the normal associations of life." Id. at 354. Subsequently, in Dorelus v. State, 747 So.2d 368 (Fla. 2000), the Florida Supreme Court stated the following:

> ...although the observations of the police officer will not necessarily be dispositive, a statement by the observing officer that he or she was able to "immediately recognize" the questioned object as a weapon may conclusively demonstrate that the weapon was not concealed as a matter of law because it was not hidden from ordinary observation.

Id. at 372.  Defendant claims that during his deposition, Deputy Seale stated "when we had him step out is when I noticed the knife sticking out from the edge of the seat."  Consequently, Defendant claims that based on Deputy Seale's deposition testimony, his counsel should have filed a motion to dismiss based on the fact that the knife was not concealed.

17

In its Response, the State asserts that the facts in <u>Hardy</u> are distinguishable from the facts in Defendant's case.  (<u>See</u> State's Response to Court's Order to Respond with attachment, attached).  In <u>Hardy</u>, the Court held that the knife, which was discovered by officers who were looking through the windshield of the defendant's car, was not a concealed weapon because the officers identified the knife from a position outside the car.  <u>Id.</u> at 41.  Moreover, in <u>Hardy</u>, the car door was closed when the officers discovered the knife.  <u>Id.</u> at 39.

Unlike the facts in <u>Hardy</u>, the State asserts that, in the instant case, the weapon was concealed from the ordinary sight of a person standing outside the vehicle, as it was not discovered until the vehicle door was opened.  (<u>See</u> State's Response to Court's Order to Respond with attachments, attached).  The State attached a portion of Deputy Seale's deposition wherein he stated the following:

> A portion of the handle was sticking out just enough where you could grab it – the majority of the knife was – except for maybe a few inches of the handle. You couldn't see it until you opened the door.

(<u>See</u> Deposition of Deputy John Seale, page 14, attached).  Consequently, the State argues that Defendant's knife was concealed, and therefore the charge of carrying a concealed weapon was valid.  (<u>See</u> State's Response to Court's Order to Respond with attachments, attached).

After reviewing ground 1, the State's Response, the court file, and the record, the Court finds that since Deputy Seale was not able to see the knife while he was standing outside the vehicle, and did not observe the knife until the vehicle door was opened, the knife was concealed.  Consequently, the Court finds that Defendant has failed to meet the first prong of <u>Strickland</u> in that he failed to prove how counsel acted deficiently in failing to file a motion to dismiss the felon carrying a concealed weapon charge when there was no basis to file said motion because the knife was concealed.  Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component.  <u>See</u> <u>Downs v. State</u>, 740 So.2d 506, 518 n. 19 (Fla. 1999).  As such, no relief is warranted upon ground 1.

(Dkt. 11, Ex. 1, Vol. III, pp. 374-77) (emphasis in original).  Thus, to establish that he is entitled to federal habeas relief on this claim, Pass must show that the state trial court incorrectly applied the *Strickland* standard in reaching its determination that the claim lacked merit.  He has not made this showing.

The record supports the state trial court's findings and Pass has not demonstrated

that the state trial court's application of the *Strickland* standard was erroneous.  Just as in

his Rule 3.850 motion, Pass has not made any showing that counsel's failure to file a

motion to dismiss as Pass contends he should have done prejudiced him in any way such

that he would not have pled guilty and would have insisted on proceeding to trial.  *See Hill*,

474 U.S. at 59.  "Even if many reasonable lawyers would not have done as defense

counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown

that no reasonable lawyer, in the circumstances, would have done so."  *Rogers v. Zant*, 13

F.3d 384, 386 (11th Cir. 1994).  In the absence of an allegation of prejudice, a claim of

ineffective assistance of counsel cannot succeed because it does not satisfy the

requirements of *Strickland*.  Pass has failed to establish that the state trial court's denial of

this claim of ineffective assistance of counsel was contrary to or an unreasonable

application of the *Strickland* standard or resulted in a decision that is based on an

unreasonable determination of the facts.  *See* 28 U.S.C. § 2254(d).  Thus, Pass is not

entitled to federal habeas relief on this claim.

**Grounds Two and Four**

In Ground Two, Pass alleges that once the state appellate court determined that the

driving while license permanently revoked offenses were "nonexistent offenses," he should

have been allowed to withdraw his guilty pleas for all offenses.  Pass further contends that

his trial counsel rendered ineffective assistance in failing to advise him that the additional

revocation charges the prosecution threatened to file if he did not plead guilty were also

"nonexistent offenses."  In Ground Four, Pass contends that his pleas were not knowingly

and voluntarily entered because the prosecutor threatened to charge him with more license

revocation counts if he did not enter guilty pleas to the charged offenses.

In the first claim presented in Ground Two, Pass asserts that he should have been allowed to withdraw his guilty pleas based on a change in state law.  A review of the record shows that Pass generally presented this claim as ground three of his Rule 3.850 motion.[13] However, Pass did not allege a violation of any constitutional right or federal law as a result of this change in state law as applied to his case.  Federal habeas relief for a person in custody pursuant to the judgment of a state court is available only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  *See* 28 U.S.C. § 2254(a).  The allegations presented in this first claim raised in Ground Two involve issues of state law and do not rise to the level of a federal constitutional violation.  *See James v. Gladish*, 2005 WL 2548453 at *5 (M.D. Fla., Oct. 12, 2005).   A state's

---

[13] Ground three of Pass's Rule 3.850 motion alleged the following:

GROUND THREE

THE DEFENDANTS [SIC] CONVICTION AND SENTENCE UNDER FLORIDA STATUTE SECTION 322.341 FOR DRIVING WHILE LICENSE PERMANENTLY REVOKED IS INVALID, SINCE CHAPTER 98-223 LAWS OF FLORIDA [SIC] HAS BEEN FOUND TO BE UNCONSTITUTIONAL

Supporting Facts: The defendant was charged by information in case number 01-CF-19495 and 02-CF-00096 to [sic] two (2) counts of driving while license permanently revoked in violation of Florida Statue [sic] section 322.341 (1998).  Defendant thereafter, on September 23, 2002, under advice of counsel entered a plea of guilt to these offenses.  Two five (5) year concurrent prison terms were imposed for these charges.

Since that time the Florida Supreme Court has held that Chapter 98-223 Laws of Florida, violates the single subject rule in Article III, section 6 of the Florida Constitution. [FN1].  Therefore, the laws created by the chapter are void since the Chapter is unconstitutional.  The defendant contends and the record shows that his offenses fell on November 7, 2001 and January 3, 2002.  Therefore, the law applied to him at the time of his offense.

[FN1] See <u>FLA DHSMV v. Critchfield</u>, 842 So.2d 782 (FLA 2003).

The proper remedy to cure the invalid nature of the convictions is to vacate the judgments and sentences of the aforementioned case numbers.

The error is fundamental therefore is [sic] properly raised in postconviction proceedings.  Fundamental error may be raised at anytime even for the first time in a postconviction motion.

(Dkt. 11, Ex. 1, Vol. I, pp. 184-85).

interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").  The Eleventh Circuit has stated that a federal writ of habeas corpus is only available in cases of federal constitutional error.  *See id.* (citing *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990)).  Because Pass's claim is not cognizable in a § 2254 petition, it must be denied.

Notwithstanding, Pass could not prevail on this claim in this Court because it was not exhausted for purposes of federal habeas review.  Pass did not present any federal dimension of the claim to the state trial court.  Issues presented in a federal habeas corpus petition must have been fairly presented to the state courts and exhausted prior to presentation in a § 2254 petition.  *See* 28 U.S.C. § 2254(b)(1);  *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005).  To exhaust a claim sufficiently, a petitioner must have presented the state court with the particular legal basis for relief in addition to the facts supporting it.  *See Diaz*, 2006 WL 3469522 at *1 (citing *Kelley v. Sec'y for Dep't of Corrs.*, 377 F.3d 1317 (11th Cir. 2004) (internal citations omitted)).  A petitioner must present his claims to the state courts such that they have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim."  *See Kelley*, 377 F.3d at 1344 (citing *Picard v. Connor*, 404 U.S. 270 (1971)).  Thus, the prohibition against raising non-exhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific factual contentions that might support relief.  *Id.*

21

In the instant case, Pass did not present this first claim raised in Ground Two to the state courts in a federal context in his Rule 3.850 motion.  Thus, he deprived the state courts of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *See Bucklon v. Crosby*, 2006 WL 2990449 at *3 (M.D. Fla., Oct. 19, 2006); *O'Sullivan*, 526 U.S. at 845. A § 2254 petition cannot be granted unless a petitioner has exhausted his available state court remedies.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'").  Pass's state law arguments do not suffice to meet the exhaustion requirement.  *See Bucklon*, 2006 WL 2990449 at *3 (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *Baldwin v. Reese*, 541 U.S. 27, 32 (2004) ("A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim on a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal'").  Thus, the claim is not exhausted for purposes of federal habeas review.

However, were Pass to now attempt to re-raise this claim in state court on federal grounds, the claims would be procedurally barred.  *See Coleman v. Thompson*, 501 U.S. 722 (1991).  Portions of a petitioner's claims that are not exhausted but would clearly be barred if returned to state court must be dismissed.  *See Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "An issue that was not properly presented to the state court which can no

longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review." *Cobbs v. McDonough*, 2006 WL 2092381 at *8 (M.D. Fla., July 26, 2006) (citing *O'Sullivan*, 526 U.S. at 839-40, 848).  Because Pass failed to present a federal constitutional claim regarding the first issue raised in Ground Two of the instant petition in his Rule 3.850 motion, he cannot now return to state court to pursue this claim, as a second Rule 3.850 motion would be subject to dismissal as an untimely and successive petition.  *See Taylor*, 2007 WL 189389 at *13; Fla. R. Crim. P. 3.850(b), (g). Thus, this Court cannot consider Pass's claim unless he can make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable.  *See Jones*, 256 F.3d at 1138; *O'Sullivan,* 526 U.S. at 845-6.

Pass does not present any argument to demonstrate cause or prejudice that would excuse his default.  Moreover, he has neither alleged nor shown that the fundamental miscarriage of justice exception applies.  Because Pass fails to proffer "specific facts which support a finding that one of the exceptions to the procedural default rule exists," it would be improper for this Court to discuss the merits of this claim.  *See Crumbley*, 2007 WL 781768 at *9 (citing *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996)); *Surrency v. Hadi*, 2006 WL 3469534 at *6 (M.D. Fla., Nov. 30, 2006) (citing *Kight v. Dugger*, 50 F.3d 1539, 1543 (11th Cir.1995)).

In the second claim raised in Ground Two, Pass contends the prosecution threatened to file additional revocation charges against him if he did not plead guilty.  He

asserts that such charges were "nonexistent offenses"[14] and that his trial attorney rendered ineffective assistance in failing to advise him as such.  To the extent this claim can be considered to have borne upon the voluntary and intelligent nature of Pass's guilty plea, the claim was not waived by entry of that plea.[15]  In a similar claim presented in Ground Four of the instant petition, Pass also challenges the voluntariness of his pleas based upon the same alleged threat of prosecution for additional "nonexistent offenses."  Pass, through counsel, presented these claims in his first amendment to his Rule 3.850 motion.[16]  The state trial court denied these claims in its final written order rendered on August 25, 2004. Specifically, the state trial court held in relevant part as follows:

> In grounds 5 and 6, Defendant claims ineffective assistance of counsel.  When ineffective assistance is alleged, the burden is on the person seeking collateral relief to specifically allege the grounds for relief and to establish whether the grounds resulted in prejudice.  Effective assistance of counsel does not mean that a defendant must be afforded errorless counsel or that future developments in the law must be anticipated.  Meeks v. State, 382 So.2d 673 (Fla. 1980).  In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the U. S.

---

[14] Pass contends the additional charges would have been "nonexistent" pursuant to the holding in Critchfield.  See note 7, supra.

[15] A voluntary and intelligent guilty plea forecloses federal collateral review of alleged constitutional errors preceding the entry of the plea.  See Tollett, 411 U.S. at 266-67; Wilson, 962 F.2d 996.  However, the plea does not bar the collateral review of ineffective assistance of counsel claims to the extent that the alleged ineffectiveness bears upon the voluntariness of the guilty plea.  See Hill, 474 U.S. at 53-59; Stano V. Dugger, 921 F.2d 1125, 1150-51 (11th Cir. 1991) ("The Court allows only challenges to the voluntary and intelligent entry of the plea if a convicted defendant can prove "serious derelictions in his counsel's advice regarding the plea.") (citation omitted).

[16] Following her appointment to represent Pass at the evidentiary hearing on his Rule 3.850 motion, attorney James filed a motion to amend Pass's Rule 3.850 motion.  In the motion to amend, Pass sought to add a fifth claim to the Rule 3.850 motion that his plea was involuntary because the prosecutor had threatened to prosecute Pass for five additional driving while license suspended offenses which allegedly occurred in December 2001.  (Dkt. 11, Ex. 1, Vol. II, pp. 507-09).  Pass further asserted in the motion to amend that his trial counsel rendered ineffective assistance in erroneously advising Pass that these additional charges would not be subject to dismissal based upon a violation of Florida's single subject rule.  (Id.).  By non-final order rendered on June 16, 2004, the state trial court denied the unsworn amendment without prejudice, and the record does not indicate that this amendment was properly refiled.  Notwithstanding, this issue was addressed in the state trial court's final order denying the Rule 3.850 motion.  (Dkt. 11, Ex. 1, Vol. IV, pp. 603-16).

Supreme Court provided the following standard for determining ineffective assistance of counsel:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.  A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction...has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing the errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable...[T]he proper standard for attorney performance is of reasonably effective assistance.

466 U.S. at 686-687.  In <u>Downs v. State</u>,453 So.2d 1102 (Fla. 1984), the Florida Supreme Court stated that the defendant must affirmatively prove prejudice.  The test for prejudice is:

> [T]hat there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

<u>Strickland</u>, 466 U.S. at 694.

In ground 5 contained in Defendant's Motion to Amend Motion For Post-Conviction Relief Filed Pursuant to Rule 3.850, Fla. R. Crim. P., Defendant claims his plea entered on September 23, 2002 was not knowing and voluntarily made because the State Attorney threatened to prosecute Defendant for five other DWLS charges, all of which occurred over a four (4) day time period in December of 2001.  Defendant claims his counsel was ineffective because he erroneously advised Defendant that the new DWLS charges were not subject to dismissal based upon a violation of the single subject rule.  Defendant claims he has standing to raise this claim as the additional DWLS offenses occurred in December 2001, which was within the window period that commenced on July 1, 1998 and closed on May 21, 2003.  Defendant cites <u>Gillman v. State</u>, 860 So.2d 1099, 1100 n. 1 (Fla. 1st DCA 2003) to support his claim.

At the evidentiary hearing, Defendant testified that the only negotiated part of his

plea was that his counsel told him that if he did not enter a plea, the State was going to bring up some charges that Channel Eight has filmed [sic] him in December 2001 driving without a driver's license.  (See July 14, 2004 Transcript, page 6, attached). Defendant further testified that Assistant State Attorney Curt Allen threatened to prosecute him for other driving while license suspended charges.  (See July 14, 2004 Transcript, page 7, attached).  When asked to explain what he understood the nature of the charges to be, Defendant testified as follows:

> Well, we were set for trial.  As a matter of fact it was my understanding we were five minutes from going, picking a jury and Mr. Allen approached Mr. Bodiford and Mr. Whidden I guess here [sic] and they both talked to me and I was sitting over here and said well, to the Court he pleads guilty.

(See July 14, 2004 Transcript, page 8, attached).

Moreover, when asked what Mr. Bodiford told him about the additional driving while license suspended charges, Defendant testified as follows:

> Well, basically what he said was they got us.  He pointed out to Mr. Steve Andrews who was sitting in the back corner in a yellow shirt and tie and said if we go to jury trial that Mr. Allen was going to take a short recess and he didn't even need police involvement and would direct file it and be back in 30 minutes and he didn't need police involvement and that all he needed was that man to get on the stand and testify that the date and time was correct on the camera when he took the pictures and it could be proven that I had no license at that time.

(See July 14, 2004 Transcript, pages 8-9, attached).  He further testified that he was advised that he could receive five years on each count and they could be run consecutively.  (See July 14, 2004 Transcript, page 9, attached).  When asked if he asked Mr. Bodiford whether the new DWLS charges were subject to the Critchfield attack, Defendant responded as follows:

> We knew the existence of the [sic] Channel Eight's films from the day of my arrest on January the third, 2002.  I had asked Mr. Bodiford on several occasions one in particular I said what about these – I wanted him to look and see where the media [sic] how can they do this and film me like this and he said that's not an issue.  We'll deal with it when the time comes.  They haven't files [sic] those charges and it's not an issue right now.

26

(See July 14, 2004 Transcript, pages 9-10, attached).  He further testified that he believed <u>Critchfield</u> would have applied to all of the DWLS's.  (See July 14, 2004 Transcript, page 10, attached).  Lastly, when asked if he had any conversations with Mr. Bodiford about what it means to waive his right to challenge and make legal arguments by entering the plea, Defendant responded, "No, I assumed they were all taken care of.  I didn't know." (See July 14, 2004 Transcript, page 12, attached).

At the same hearing, Mr. Joe Bodiford testified, and when asked to explain the nature of the conversations he had with Assistant State Attorney Curt Allen, Mr. Bodiford testified as follows:

> Well, Mr. Allen and I had a great deal throughout the year great deal [sic] of contact on this case.  Let's start by saying there was never an offer made by the State, never an offer was made [sic].  And there had been a few times throughout the course of the year that in passing Mr. Allen would say well, there are these other charges out there and depending on what happens here there are those other ones.  He never ever said I'm going to file them, I'm going to file them.  Quite frankly what I always told Mr. Pass is we need to lay low on those.  We need not mention those other charges because if we stir the pot then they can file them.

> On the morning of trial, um, when we were getting ready to go to trial it did come up again and Mr. Allen said, well if we're going to trial on this, that's fine but understanding there are those other charges out there that I can file and my understanding from just the tone of his conversation plus having known the man for ten years it was more than likely he would file them but I will say that it was never in the form of a threat.  I never took it as a threat.

(See July 14, 2004 Transcript, pages 20-21, attached).  When asked how he related that to Defendant, Mr. Bodiford testified as follows:

> I went over and told him, I said listen, you know, we got – and what he said was true Steve Andrews was sitting right there in the courtroom.  I had seen the tapes.  I knew that they could put Mr. Pass behind the wheel it was my understanding at least six times because they were felony charges they didn't even have to have a citation.  They didn't even have to have a cop pull him over and give him a citation right then.  They could file it based on the witnesses and the video tapes.  I knew they they [sic] could file them and I also knew they could file them under 322.34 which is the third or subsequent DWLS charges and taking Critchfield out of the equation.  I told him that I said listen, what could happen to you here if you go to trial on these charges whether you win or lose

you still could be facing six more felonies with a possibility of a 30 year sentence on that.  I phrased it to him like that nothing is ever certain but that is a possibility and you have to know going into this but I will not – I will say that it was not Mr. Pass' – that was not the main consideration of him deciding to plea.

The fact of his DUI the fact of the case with the weapon and his driving history. The facts of the case in the DUI alone I think charges [sic] was a deciding factor this could not go to trial.

Well, the basis [sic] facts were that Mr. Pass had been seen by an anonymous caller blowing through the intersection of MLK and Falkenburg Road.  He did not stop.  He ran red a [sic] light.  He ran off the road a few yards down and stopped.  The deputy sheriff officer came on scene and found him to be passed out in his truck with a cigarette in one hand and cell phone in the other.  They got him out.  What happened when –

Okay, everything that took place after Mr. Pass got out of the truck were [sic] captured on video.  I have done a lot of DUI's in my time as both a prosecutor and as a defense attorney and I have worked on the Lexus [sic] DUI book and arguably it was the worst DUI video I have ever seen.

I brought along my T.V. with a video built in into the courtroom one day and we plugged it in over there and Mr. Pass saw it and based on that we knew we did not have any leg to stand on to challenge that DUI.

He had always alleged to me that it was sleep apnea and that he had fallen asleep. I took the same video recorder and the same video and lugged it out to the sleep apnea doctor who looked it over a long period of time and promptly told me, no, that's not sleep apnea that is intoxication so that defense fell threw [sic] so beyond that we had no defense and Mr. Pass knew we could not go to trial.  His whole thing was the weapon.  He wanted to go to trial on the weapon part.

(See July 14, 2004 Transcript, pages 21-24, attached).

When asked if the additional DWLS charges, which occurred within a four day time period in December of 2001, would have fallen within the Critchfield window and been subject to the same constitutional challenge, Mr. Bodiford responded, "Depending on what statute they were charged because remember they were never charged."  (See July 14, 2004 Transcript, pages 35-35 attached).  When asked if

Assistant State Attorney Curt Allen used the additional DWLS charges are [sic] leverage in the plea negotiations, Mr. Bodiford respond [sic] as follows:

> I don't know that I would characterize it as that because I never thought Curt Allen threatened me. I think I was more afraid of it than Curt Allen was correct, because we knew all along every time I talked to this guy, what about the Channel Eight stuff, what about the Channel Eight stuff, what about that stuff, what about that stuff and I said to [sic] I'm not going to bring it up because it's not charges [sic] and I'm not going to do it.

> You want me to go tell Curt Allen about that and have him drop five more felonies on you or six more felonies, no, so I would not say that Allen came over and threatened, never, I don't think he did that but the bottom line is he could have had he wanted to he could have very easily and ethically charged those cases and I knew that. I was a prosecutor and that was my fear.

(See July 14, 2004 Transcript, page 35, attached). However, Mr. Bodiford did testify that Assistant State Attorney Curt Allen advised him that if he filed the additional charges, he would ask for consecutive sentences. (See July 14, 2004 Transcript, page 36, attached).

At the hearing, attorney Mr. Wade Whidden testified that although he had no formal association with Defendant's case, he was in the courtroom on July 22, 2002 when conversations took place between Mr. Bodiford and Defendant. (See July 14, 2004 Transcript, pages 44-45, attached). He testified that he knew that Mr. Bodiford was convinced that there was another statute which would have provided a basis for the State to go forward on the additional DWLS charges. (See July 14, 2004 Transcript, pages 45-46, attached). He further testified that he recalled Mr. Bodiford and Defendant discussing the State's likelihood of prosecuting Defendant on the additional DWLS charges, but he did not recall any discussion about the sentences running consecutively if Defendant was convicted. (See July 14, 2004 Transcript, pages 46-47, attached).

After reviewing ground 5, the testimony, evidence, and argument presented on July 24, 2004, the court files, and the record, the Court finds the testimony of Mr. Bodiford to be more credible than that of Defendant. Therefore, the Court finds that Assistant State Attorney Curt Allen never threatened to prosecute Defendant for five other DWLS charges if Defendant did not enter a plea. Moreover, the Court finds that although Mr. Bodiford did advise Defendant of the State's ability to file the additional DWLS charges, Mr. Bodiford never advised Defendant that Assistant State Attorney Curt Allen threatened to prosecute Defendant for the additional

DWLS charges if Defendant did not enter a plea.  Consequently, the Court finds that Defendant's September 23, 2002 plea was knowing and voluntarily entered.

Moreover, the Court finds that based on Mr. Bodiford's testimony and Mr. Whidden's testimony, Mr. Bodiford believed that the State could proceed under a different statute, thereby eliminating any possible dismissal based on <u>Critchfield</u>.  Therefore, this Court finds that assuming Mr. Bodiford did advise Defendant that the new DWLS charged [sic] were not subject to dismissal based upon a violation of the single subject rule, Mr. Bodiford's advice was not erroneous as the additional DWLS charges had yet to be filed, and would have only been subject to the <u>Critchfield</u> challenge if charged under § 322.341, Florida Statute.  Consequently, Defendant has failed to meet the first prong of <u>Strickland</u> in that he has failed to prove counsel acted deficiently when counsel's advise [sic] was not erroneous based on the fact that the additional DWLS charges had not been filed and would only be subject to dismissal upon a violation of the single subject rule if the State filed them under § 322.341, Florida Statute.  Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component.  <u>See</u> <u>Downs v. State</u>, 740 So.2d 506, 518 n. 19 (Fla. 1999).  As such, no relief is warranted upon ground 5.

(Dkt. 11, Ex. 1, Vol. IV, pp. 609-14).

As to the ineffective assistance claim presented in Ground Two, the record supports the state trial court's findings and Pass has not demonstrated that the state trial court's application of the *Strickland* standard was erroneous.  Pass has not made a sufficient showing that the additional revocation charges the prosecution threatened to file if he did not plead guilty were also "nonexistent offenses."  He has shown neither that the State actually threatened to file the additional charges, nor has he demonstrated that were it not for counsel's alleged failure to advise him as he know suggests, he would not have pled guilty to the offenses he was actually charged with and would have insisted on going to trial.  His bald assertion that he would have so insisted, without any factual support, is insufficient to justify federal habeas relief.  Since this is a claim of ineffective assistance of counsel, the burden of proof is on Pass to substantiate the facts supporting his claim.  Pass

30

was given that opportunity at the evidentiary hearing on his Rule 3.850 motion.  This Court is bound to accept the factual findings of the state court unless Pass proves by clear and convincing evidence that it was not based on a reasonable determination from the evidence.  *See Kelley v. Sec'y, Dept. of Corr.*, 2006 WL 334210 at *15-16 (M.D. Fla., Feb. 16, 2006).  Pass has not met that burden and is not entitled to relief on Ground Two.

As to the claim raised in Ground Four that his plea was involuntary due to the prosecution's threat to file additional charges against him, Pass is likewise not entitled to relief.  As discussed in Ground One, *supra*, Pass's pleas were voluntarily entered.  Pass signed written plea forms in which he averred that he was pleading freely and voluntarily, and that he had not been threatened or coerced to enter his pleas.  (Dkt. 11, Ex. 1, Vol. I, pp. 74, 152).  Pass averred at the plea hearing that he had not been threatened or coerced into entering the pleas.  His statements made under oath at the plea hearing "carry a strong presumption of verity."  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Pass has not demonstrated that the state trial court's finding that the prosecutor did not threaten him with additional charges if he did not plead guilty was objectively unreasonable.  Pass has not overcome the presumption that the state trial court's factual findings were correct, nor has he rebutted the presumption of correctness by clear and convincing evidence.  *See* 28 U.S.C. § 2254(e)(1); *Henderson*, 353 F.3d at 890-91.  Based on the bare allegations presented to support this claim and the evidence adduced at the evidentiary hearing on Pass's Rule 3.850 motion, the state trial court's rejection of the claim was a reasonable application of established federal law.  Thus, Pass is not entitled to federal habeas relief on Ground Four.

**Grounds Three and Five**

In Ground Three of the instant petition, Pass contends that he did not have the necessary number of predicate convictions required for a felony DUI conviction pursuant to § 316.193(2)(b), Florida Statutes.  He alleges that in its order denying relief, the state post-conviction court relied on two DUI convictions from 1994 and one DUI conviction from 1980 as the three predicate DUI offenses to support his felony DUI conviction.   Pass argues that he has only one qualifying offense from 1994 and "specifically denies any memory of the alleged 1980 conviction."   He asserts that the prosecution failed to offer sufficient proof to establish the required number of predicate DUI convictions and that such failure amounted to a due process violation.  In a related claim, Pass contends in Ground Five of the instant petition that his trial counsel was ineffective in failing to challenge the applicability of § 316.193(2)(b), Florida Statutes, "because a fair reading of that section requires the previous DUI convictions to have been committed within five years" and his previous convictions were more than five years old.

The allegations presented in Ground Three relate to a matter of state law and therefore the claim is not cognizable in this Court under § 2254.  Pass does not allege a violation of any constitutional right or federal law as a result of the alleged error by the state post-conviction court.  His reference to the Due Process Clause, without more, does not state a viable federal claim.[17]  Federal habeas relief for a person in custody pursuant to the

---

[17] Pass mentions due process in Ground Three of his § 2254 petition as follows:

The Due Process Clause requires the prosecution to prove the existence of every element of the offense beyond a reasonable doubt.  *See In re Winship*, 397 U.S. 358, 364 (1970).

(Dkt. 1, p. 8).

judgment of a state court is available only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. *See* 28 U.S.C. § 2254(a). The allegations presented in Ground Three challenging the state post-conviction court's findings as to the requisite number of predicate offenses required under Florida law to sustain a state felony DUI conviction do not rise to the level of a federal constitutional violation. *See James v. Gladish*, 2005 WL 2548453 at *5 (M.D. Fla., Oct. 12, 2005).

It is well established in the Eleventh Circuit that a federal court is not the appropriate forum for a prisoner who wishes to challenge the process afforded him in state collateral proceedings. *See Heard v. Crosby*, 2005 WL 941020 at *4 (N.D. Fla., Apr. 23, 2005) (citing *American Mfrs. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999)). This is due to the fact that such a challenge is an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (concluding that petitioner's § 2254 claim that the state trial court violated his due process rights because it failed to conduct an evidentiary hearing and did not attach to its opinion denying relief those portions of the record on which it relied went to issues unrelated to the cause of petitioner's detention and did not state a basis for habeas relief); *Bacharach v. McDonough*, 2006 WL 1775909 at *8 (N.D. Fla., June 23, 2006) (because § 2254 petitioner's claim was merely a challenge to the procedure used by the state courts in a post-conviction matter and was not a constitutional challenge to his confinement, the claim did not constitute

grounds for habeas relief).

Pass's claim amounts to an assertion that the state post-conviction court erred in finding that he did, in fact, have the requisite number of predicate DUI convictions sufficient to support his felony DUI conviction. This is clearly a state law claim challenging the state's application of its own laws that does not rise to the level of a federal constitutional violation. *See James v. Gladish*, 2005 WL 2548453 at *5 (M.D. Fla., Oct. 12, 2005). Such a claim is not cognizable on federal habeas corpus review. *See* 28 U.S.C. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). The Eleventh Circuit has stated that a federal writ of habeas corpus is only available in cases of federal constitutional error. *See id.* (citing *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990)). This limitation on federal habeas review applies with equal force when a petition, which actually involves state law issues, is couched in terms of a Fourteenth Amendment due process violation. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988); *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976).[18] To the extent the claim presented in Ground Three can be construed to allege a federal due process violation, Pass would still not be entitled to relief because the underlying substance of the claim alleges errors of state law by a state court. Thus, the claim would not be cognizable in a § 2254 petition.

Notwithstanding, Pass could not prevail on Ground Three as this claim is not

---

[18] In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

exhausted for purposes of federal habeas review.  Pass states in his § 2254 petition that he exhausted this claim by presenting it in his Rule 3.850 motion for post-conviction relief in the state trial court.  However, a review of that motion shows that, while he did raise the claim presented in Ground Three relating to the predicate convictions in his Rule 3.850 motion, he did not present any federal dimension of the claim to the state trial court.  Issues presented in a federal habeas corpus petition must have been fairly presented to the state courts and exhausted prior to presentation in a § 2254 petition.  *See* 28 U.S.C. § 2254(b)(1);  *McNair*, 416 F.3d at 1302.  A § 2254 petition cannot be granted unless a petitioner has exhausted his available state court remedies.  *See Snowden*, 135 F.3d at 735.  Pass's state law arguments do not suffice to meet the exhaustion requirement.  *See Bucklon*, 2006 WL 2990449 at *3; *Duncan*, 513 U.S. at 365; *Baldwin*, 541 U.S. at 32.  Thus, this claim is not exhausted for purposes of federal habeas review.

However, were Pass to now attempt to re-raise the claim in state court on federal grounds, it would be procedurally barred.  *See Coleman*, 501 U.S. 722.  Because Pass failed to present a federal constitutional claim regarding the issue raised in Grounds Three of the instant petition in his Rule 3.850 motion, he cannot now return to state court to pursue the claim, as a second Rule 3.850 motion would be subject to dismissal as an untimely and successive petition.  *See Taylor*, 2007 WL 189389 at *13; Fla. R. Crim. P. 3.850(b), (g).  Thus, this Court could not consider Pass's claim unless he could make a showing that the cause and prejudice or the fundamental miscarriage of justice exception is applicable.  *See Jones*, 256 F.3d at 1138; *O'Sullivan,* 526 U.S. at 845-6.

Pass does not present any argument to demonstrate cause or prejudice that would

excuse his default.  Moreover, he has neither alleged nor shown that the fundamental

miscarriage of justice exception applies.  Because Pass fails to proffer "specific facts which

support a finding that one of the exceptions to the procedural default rule exists," it would

be improper for this Court to discuss the merits of these claims.  *See Crumbley*, 2007 WL

781768 at *9; *Surrency*, 2006 WL 3469534 at *6.

As to Ground Five, Pass is not entitled to relief.  He contends that in 2001, there was

a five year time limit on the prior convictions used for the felony DUI enhancement set forth

in Fla. Stat. § 316.193(2)(b).[19]  He asserts that his trial attorney was ineffective in failing to

challenge the applicability of § 316.193(b)(2) based on the fact that his prior DUI

convictions were more than five years old.  To the extent that this claim alleges an instance

of ineffective assistance rendered prior to entry of Pass's guilty plea for failure to challenge

the applicability of the statute under which Pass was charged, the claim was waived by

entry of the plea because the claim does not implicate the validity of the plea itself.  *See*

*Jennings*, 2006 WL 2425522 at *7; *Glinsey*, 209 F.3d at 392; *Wilson*, 962 F.2d at 997.

Accordingly, relief on Ground Five will be denied.

Notwithstanding, even if the Court were to find that this claim was not waived by

entry of the guilty plea, Pass would not be entitled to federal habeas relief.  Pass presented

this claim as ground six of his Rule 3.850 motion.  The state trial court denied the claim in

---

[19] This statute read in relevant part as follows:

Any person who is convicted of a fourth or subsequent violation of this section is guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084; however, the fine imposed for such fourth or subsequent violation may be not less than $1,000.

Fla. Stat. § 316.193(2)(b) (West 2001).

its written order rendered on August 25, 2004.  Specifically, the state trial court, in applying

the *Strickland* standard to this ineffective assistance of counsel claim, held in relevant part

as follows:

> In ground 6 contained in Defendant's Second Motion to Amend Motion For Post
> Conviction Relief, Defendant claims ineffective assistance of counsel due to
> counsel's failure to investigate evidence before advising Defendant to enter a plea
> of guilty.  Specifically, Defendant claims counsel failed to investigate the dates of the
> prior DUI convictions.  Defendant claims that in 2001, there was a five (5) year time
> limitation on the priors used for felony DUI enhancement.  Defendant claims that the
> 2001 version of the felony DUI statute makes reference to § 775.084, Florida
> Statute, thereby limiting the predicate DUI offenses to five (5) years from the date
> of the last conviction or release from prison or supervision.  Defendant claims that
> neither his May 1996 release from prison or [sic] his predicate offense dates fall
> within the five (5) year time limitation set out in § 775.084, Florida Statute.
> Consequently, Defendant claims counsel was ineffective for failing to raise the
> alleged claim which would have precluded a finding of guilt on the felony charge of
> DUI.
>
> In its Response, the State asserts that Defendant's suggestion that the inclusion of
> the reference to § 775.084 Florida Statute in the felony DUI statute limits its
> application to prior offenses that occurred within a specific time limit is simply not
> supported under any known theory of statutory construction.  (See State's Response
> to Defendant's Second Motion to Amend, attached).  The State further asserts that
> the plain meaning of the felony DUI statute is clear and there is no legal basis to
> support Defendant's interpretation of the statute.   (See State's Response to
> Defendant's Second Motion to Amend, attached).  Consequently, the State asserts
> that defendant's trial counsel cannot be deemed ineffective for failing to raise this
> issue prior to the time Defendant entered his plea.   (See State's Response to
> Defendant's Second Motion to Amend, attached).
>
> After reviewing ground 6, the State's Response to Defendant's Second Motion to
> Amend, the arguments presented on August 23, 2004, the court files, and the
> record, the Court finds that the plain reading of § 316.193, Florida Statute does not
> require that the predicate offenses occur within five years of the felony DUI or that
> the felony DUI occur within five years of Defendant's release from prison or
> supervision.   Consequently, Defendant has failed to meet the first prong of
> Strickland in that he has failed to prove how counsel acted deficiently in failing to
> investigate the dates of the prior DUI convictions when § 316.193, Florida Statute
> does not require that the predicate offenses occur within five years of the felony DUI
> or that the felony DUI occur within five years of Defendant's release from prison or

> supervision and there is no legal basis to support Defendant's interpretation of the statute.  Since Defendant has failed to meet the first prong of <u>Strickland</u>, it is unnecessary to address the prejudice component.  <u>See</u> <u>Downs v. State</u>, 740 So.2d 506, 518, n. 19 (Fla. 1999).  As such, no relief is warranted upon ground 6.

(Dkt. 11, Ex. 1, Vol. IV, 614-16).  Pass has not rebutted the presumption of correctness accorded the state trial court's factual findings.  *See* 28 U.S.C. § 2254(e)(1).  Having failed to demonstrate that trial counsel's failure to pursue this line of investigation was unreasonable under prevailing professional norms, Pass cannot satisfy the deficiency prong of the *Strickland* test.  *See Weatherly v. Crosby*, 2006 WL at *8 (M.D. Fla., Jan. 27, 2006).  Thus, Pass would not be entitled to relief because he has not shown that either the reasoning or the result of the state court decision rejecting his claim is at odds with any United States Supreme Court case, much less one in which the facts are "materially indistinguishable."  *See Bell v. Cone*, 535 U.S. 685, 694 (2002).  Accordingly, the Court cannot conclude that the trial court's rejection of Pass's claim was objectively unreasonable.  Therefore, he is not entitled to relief on this claim.

**Ground Six**

In his final claim, Pass contends that the state trial court failed to establish a sufficient factual basis during the plea hearing to support his plea to the concealed weapon offense charged in Case No. 01-19495.  He alleges that the factual basis provided by the prosecution was misleading and inaccurate and failed to describe the weapon.

Pass does not allege a violation of any federal right in this claim.  The due process clause does not impose a constitutional duty on state trial court judges to ascertain a factual basis before accepting a guilty plea that is not accompanied by a claim of

innocence.  *See Coley v. Sec'y, Dep't of Corr.*, 2007 WL 1079620 at *4 (M.D. Fla., Apr. 9, 2007) (citing *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1983) (internal citation omitted)).  States are free to adopt procedural rules requiring a factual basis, as Florida has done in Rule 3.172(a) of the Florida Rules of Criminal Procedure.[20]  *See* Fla. R. Crim. P. 3.172(a).  However, the federal Constitution does not require the states to do so and a violation of such state procedural rules does not, of itself, raise a federal constitutional question cognizable in a federal habeas corpus proceeding.  *See Lopez v. McDonough*, 2006 WL 2802002 at *9 (M.D. Fla., Sept. 28, 2006) (citing *Stewart v. Estelle*, 634 F.2d 998, 999 (5th Cir. 1981); *Van Poyck v. Wainwright*, 595 F.2d 1083 (5th Cir. 1979)).  Moreover, a state's interpretation of its own laws or rules does not provide a basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  *See Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983).

Pass does not explicitly cite any federal constitutional provision or federal law to support his claim.  To the extent that Ground Six of the instant petition  can be liberally construed as raising a due process claim, Pass fares no better.  Because  Pass's claim alleges a failure by the state trial court to follow a state procedural rule, no question of a constitutional nature is presented, and the claim is not subject to review in  a federal habeas proceeding.  *See McCullough v. Singletary*, 967 F.2d 530, 536 (11th Cir. 1992). This limitation equally applies when a federal habeas petition, which actually involves state

---

[20] Rule 3.172 provides in relevant part:

Before accepting a plea of guilty or nolo contendere, the trial judge shall be satisfied that the plea is voluntarily entered and that there is a factual basis for it.  Counsel for the prosecution and the defense shall assist the trial judge in this function.

Fla. R. Crim. P. 3.172(a).

law issues, is couched in terms of due process.  *See Branan*, 861 F.2d at 1508; *Willeford*, 538 F.2d 1196-98.  Thus, relief is not warranted on Ground Six.

Accordingly, the Court orders:

That Pass's § 2254 petition is denied, with prejudice.  The Clerk is directed to enter judgment against Pass and to close this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability.  A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  *Id.*  "A [COA] may issue ··· only if the applicant has made a substantial showing of the denial of a constitutional right."  *Id.* at § 2253(c)(2).  To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not

entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on May 7, 2007.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Carl Pass